FILED
United States Court of Appeals
Tenth Circuit

October 29, 2010

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

VICTOR LAVONE LEWIS,

Defendant - Appellant.

No. 09-3329

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE OF KANSAS
(D.C. NO. 2:06-CR-20139-CM-1)

---

Melanie S. Morgan, Morgan Pilate, LLC, Olathe, Kansas, for Defendant - Appellant.

Leon Patton, Assistant United States Attorney (Lanny D. Welch, United States Attorney, with him on the brief), District of Kansas, Kansas City, Kansas, for Plaintiff - Appellee.

---

Before **HARTZ**, **ANDERSON**, and **TYMKOVICH**, Circuit Judges.

---

**ANDERSON**, Circuit Judge.

Defendant and appellant, Victor Lavone Lewis, appeals his sentence of 168 months' imprisonment, imposed following his guilty plea to several counts involving the distribution of cocaine base (crack). Because we find his sentence neither procedurally nor substantively unreasonable, we affirm.

**BACKGROUND**

On September 14, 2006, Mr. Lewis was charged by indictment with one count of conspiring to distribute more than 50 grams of crack; two counts of distributing more than five grams of crack; and one count of possessing crack with the intent to distribute it. He was arrested on December 29, 2006, and released on bond the following January. Mr. Lewis's probation officer then submitted a petition alleging that Mr. Lewis had violated the conditions of his release by submitting urine samples indicating marijuana usage and by violating his travel restrictions by being in Tulsa, Oklahoma, on February 13, 2007, where he committed a traffic violation. The district court ordered the issuance of a warrant, pursuant to which Mr. Lewis was arrested and his pretrial release was revoked. As indicated above, he pled guilty on April 14, 2008. Because Mr. Lewis's crime involved crack cocaine, rather than powder cocaine, he was subject to the anomalous crack cocaine sentencing provisions. We explain the history of these provisions.

**I. Development of Crack/Powder Disparity:**

At the time Mr. Lewis was sentenced, the sentencing ratio of crack cocaine to powder cocaine was 100:1. In other words, for purposes of drug quantities for sentencing under the guidelines, one gram of crack triggered the same mandatory penalties as one hundred grams of powder cocaine. "The 100:1 ratio yields sentences for crack offenses three to six times longer than those for powder offenses involving equal amounts of drugs." Kimbrough v. United States, 552 U.S. 85, 94 (2007).

This ratio has resulted in a general tumult concerning its propriety. When the crack/powder disparity was first introduced in the Anti-Drug Abuse Act of 1986, crack cocaine "was a relatively new drug . . . but it was already a matter of great concern." Id. at 95. For a variety of reasons, Congress believed crack was significantly more dangerous than powder cocaine, an assumption that proved eventually to be wrong.[1]

---

[1]The reasons Congress believed crack was more dangerous than powder include the facts that:

> (1) crack was highly addictive; (2) crack users and dealers were more likely to be violent than users and dealers of other drugs; (3) crack was more harmful to users than powder, particularly for children who had been exposed by their mothers' drug use during pregnancy; (4) crack use was especially prevalent among teenagers; and (5) crack's potency and low cost were making it increasingly popular.

Kimbrough, 552 U.S. at 95-96 (citing United States Sentencing Commission, Report to Congress: Cocaine and Federal Sentencing Policy iv (May 2002)).

Thus, the Sentencing Commission subsequently determined "that the crack/powder sentencing disparity is generally unwarranted." Id. at 97. While not believing that it should eliminate entirely the disparity between crack and powder sentences, the Commission "has several times sought to achieve a reduction in the crack/powder ratio." Id. at 99. In 1995, the Commission proposed amendments to the guidelines replacing the 100:1 ratio with a 1:1 ratio, but Congress, exercising its authority under 28 U.S.C. § 994(p), rejected the amendments, while directing the Commission itself to propose revisions to the crack/powder drug quantity ratio.[2]

The Commission then issued reports in 1997 and 2002, "recommending that Congress change the 100:1 ratio prescribed in the 1986 Act." Kimbrough, 552 U.S. at 99. The 1997 Report proposed a 5-to-1 ratio, and the 2002 Report recommended lowering the ratio "at least" to 20 to 1. Congress did not act on either Report.

In the Commission's 2007 Report, the Commission again encouraged Congress to amend the 1986 Act to adjust the 100-to-1 ratio. "This time, however, the Commission did not simply await congressional action. Instead, the Commission adopted an ameliorating change in the Guidelines. The alteration, which became effective on November 1, 2007 [Amendment 706], reduces the base

_____

[2]28 U.S.C. § 922(p) requires the Commission to submit proposed guidelines amendments to Congress, and provides that such amendments become effective unless "modified or disapproved by . . . Congress."

-4-

offense level associated with each quantity of crack by two levels." Id. at 99-100

(citation omitted); see also Dillon v. United States, 130 S. Ct. 2683, 2688 (2010).

By virtue of Amendment 706, sentences for crack offenders are "between two and

five times longer than sentences for equal amounts of powder." Kimbrough, 552

U.S. at 100. The Commission noted that "[a]ny comprehensive solution requires

appropriate legislative action by Congress." Id. (quoting 2007 Report 10).

There have been increasingly urgent requests from other quarters to make

changes to the crack/powder ratio. Indeed, the United States Attorney General

Eric Holder recently stated:

> It is the view of this Administration that the 100-to-1 crack-powder
> sentencing ratio is simply wrong. It is plainly unjust to hand down
> wildly disparate prison sentences for materially similar crimes. It is
> unjust to have a sentencing disparity that disproportionately and
> illogically affects some racial groups.

Attorney General Eric Holder at the D.C. Court of Appeals Judicial Conference

(June 19, 2009) (available at http://www.justice.gov/ag/speeches/2009/ag-speech-

090619.html). Additionally, Assistant Attorney General Lanny A. Breuer has also

recently remarked:

> [W]e cannot ignore the mounting evidence that the
> current cocaine sentencing disparity is difficult to justify based on the facts and science, i
> inherently more addictive substance than powder cocaine. We know of no other
> controlled substance where the penalty structure differs so dramatically because
> of the drug's form.
> Moreover, the Sentencing Commission has documented that
> the quantity-based cocaine sentencing scheme often punishes low-
> level crack offenders far more harshly than similarly situated powder

cocaine offenders. . . . The impact of these laws has fueled the belief across the country that federal cocaine laws are unjust.

Restoring Fairness to Federal Sentencing: Addressing the Crack-Powder Disparity: Hearing Before the Subcomm. on Crimes and Drugs of the S. Comm. on the Judiciary, 111th Cong. 1 (2009) (Statement of Lanny A. Breuer, Assistant Attorney Gen. of the Criminal Division, United States Department of Justice) at 9.

Assistant A.G. Breuer recognized, however, that prosecutors and courts must follow the current laws, subject to the courts' ability to vary from the crack guidelines, until Congress effects a change:

> Until a comprehensive solution – one that embodies new quantity thresholds and perhaps new sentencing enhancements – can be developed and enacted as legislation by Congress and as amended guidelines by the Sentencing Commission, federal prosecutors will adhere to existing law. We are gratified that the Sentencing Commission has already taken a small step to ameliorate the 100:1 ratio contained in existing statutes by amending the guidelines for crack cocaine offenses. We will continue to ask federal courts to calculate the guidelines in crack cocaine cases, as required by Supreme Court decisions. However, we recognize that federal courts have the authority to sentence outside the guidelines in crack cases or even to create their own quantity ratio. Our prosecutors will inform courts that they should act within their discretion to fashion a sentence that is consistent with the objectives of 18 U.S.C. § 3553(a) and our prosecutors will bring relevant case-specific facts to the courts' attention.

Id. at 11.

Congress finally took action recently, when it enacted the Fair Sentencing Act of 2010, Pub. L. 111-220, 124 Stat. 2372 (Aug. 3, 2010). This Act reduces

that crack/powder ratio to 18-1. It is not, however, retroactive and thus does not apply to this case. It does, on the other hand, relegate this case to a relatively short shelf-life, inasmuch as defendants being sentenced henceforth will be sentenced under a different applicable ratio.

The explicit crack/powder ratio is, unfortunately, not the only source of some confusion concerning the application of the crack sentencing guidelines. The question arose, and divided the circuit courts of appeal, as to whether "a sentence . . . outside the guidelines range is per se unreasonable when it is based on a disagreement with the sentencing disparity for crack and powder cocaine offenses." United States v. Kimbrough, 174 Fed. Appx. 798, 799 (4th Cir. 2006) (unpublished) (per curiam), rev'd, 552 U.S. 85 (2007). The Supreme Court held that a district judge "may determine . . . that, in the particular case, a within-Guidelines sentence is 'greater than necessary' to serve the objectives of sentencing. In making that determination, the judge may consider the disparity between the Guidelines' treatment of crack and powder cocaine offenses." Kimbrough, 552 U.S. at 91 (citation omitted). Thus, district courts are permitted to vary from the advisory guideline sentence calculated with the 100:1 ratio.

Further confusion arose, however, as to whether Kimbrough contemplated variances from the 100:1 ratio only when the sentencing court, looking at the particular circumstances of the defendant and his offense under the rubric of § 3553(a), felt a variance was appropriate in the particular case before it, or

whether sentencing courts could vary simply on the ground that the court believed, as a policy matter, that the 100:1 ratio creates unwarranted disparities among defendants. In Spears v. United States, 129 S. Ct. 840, 843 (2009), the Supreme Court clarified "the point of Kimbrough." Id. at 843. The Court explained that Kimbrough represented "a recognition of district courts' authority to vary from the crack cocaine Guidelines based on *policy* disagreement with them, and not simply based on an individualized determination that they yield an excessive sentence in a particular case." Id. Thus, "district courts are entitled to reject and vary categorically from the crack-cocaine Guidelines based on a policy disagreement with those Guidelines." Spears, 129 S. Ct. at 843-44. District courts must, however, recognize that they have the authority to vary downward based on the crack/powder disparity: "The district court must at least recognize that it has the authority to vary downward based on the disparity [between powder and crack]." United States v. Anderson, __F.3d ___, 2010 WL 3341228, at *7 (8th Cir. 2010) (citing Moore v. United States, 129 S. Ct. 4, 5 (2008) (per curiam) (reversing decision based on finding that the district court did not recognize authority to vary downward based on crack/powder disparity in the Guidelines).

Accordingly, with that background in mind, we turn to the district court's decision to sentence Mr. Lewis.

**II. Sentencing of Mr. Lewis:**

In preparation for Mr. Lewis's sentencing, the United States Probation Office prepared a presentence report ("PSR"), which calculated an advisory sentencing range under the United States Sentencing Commission, Guidelines Manual ("USSG") (2008). After determining that Mr. Lewis's offenses involved crack totaling 4.5 kilograms or more, the PSR established a base offense level of 38. See USSG §2D1.1(c)(1). After adjustments, including a two-level enhancement for possession of a firearm, the total offense level was calculated to be 37. With a criminal history category of III, Mr. Lewis's advisory guidelines sentencing range was 262 to 327 months' imprisonment.

Mr. Lewis objected to the drug quantity, arguing that the relevant quantity of crack was between 500 and 1500 grams, which yielded a base offense level of 34. He also objected to the enhancement for possession of a firearm. Additionally, Mr. Lewis filed a sentencing memorandum, in which he stated that "defendants convicted of crack cocaine offenses . . . endure[] sentences 100 times more harsh than their powder cocaine counterparts." Sent. Mem. at 1-2. He further argued that, under Kimbrough, a sentencing court "may consider the disparity in the sentencing guidelines between crack cocaine and powder cocaine in determining a reasonable sentence." Sent. Mem. at 3. Mr. Lewis also alleged that under Spears, a court "has the ability to impose a variant sentence based on the disparity based on the District Court's own policy disagreement with the

guidelines." Sent. Mem. at 4. He thus concluded that a sentencing court "must now decide" whether, solely as a matter of policy, it disagrees with the way the crack offense levels are calculated under the guidelines, and whether, "in all crack cocaine sentencing cases," it will eliminate the disparity by applying to crack cocaine offenses the offense levels that are applicable to powder cocaine offenses. Id. at 5-6. Mr. Lewis accordingly sought a downward variance from the advisory guidelines range, which would result in a sentence of 120 months, the statutory mandatory minimum.

At the sentencing hearing, the parties by agreement asked the court to sustain Mr. Lewis's objection to the PSR's calculation of drug quantity, and Mr. Lewis withdrew his objection to the firearm possession enhancement. The district court therefore made findings regarding those two facts and, without objection from either party, determined the total offense level to be 33. With Mr. Lewis's criminal history category of III, this yielded an advisory guidelines range of 168 to 210 months' imprisonment.

The district court then invited Mr. Lewis to comment on the sentence to be imposed. He again argued that a variance was appropriate, making his offense level the same as if he had been convicted of offenses involving powder cocaine. The government opposed any variance, and argued for a sentence within the guidelines range as already calculated, noting that the government had revoked Mr. Lewis's pretrial release because of repeated drug usage. The government also

addressed particular factors in this case, including Mr. Lewis's possession of a firearm and his extensive criminal history. The government recognized that there could be policy disagreements and that the court could, under Spears, impose a variant sentence based on the sentencing disparity between crack and powder cocaine. It further noted, however, that the facts of this case did not warrant a variance.

In imposing sentence, the court recognized Mr. Lewis's "lengthy criminal history," which included "convictions for battery on law enforcement officers and obstruction." Tr. of Sentencing Hr'g at 27, R. Vol. 2 at 30. The court also considered Mr. Lewis to be a "significant distributor of crack" in his community. Id. at 28, R. Vol. 2 at 31.

The court then refused to grant a downward variance, explaining:

In regards to the variance, the court for the record would state it understands it has the right to issue a variance, it has the authority to do so. The court's considered the statutory factors as well as the law that's in effect at this time, and . . . I would find that . . . the law right now is not that [the crack/cocaine disparity] should be one to one. Presently, there's legislation pending in congress that would make that the case. But [government counsel] was correct, there's also legislation pending that would increase the penalties. Until congress actually acts, the court would consider the law that's presently in effect. It's true that there is some Department of Justice spokes people, including the attorney general himself, who spoke out in regards to their position as well as the administration's position. That's something this court's aware of. But again, in regards to the weight the court gives that, their arguments, their statements are not the law at this time. . . . In regards to the variance, well, I don't believe that there's been a sufficient basis shown for this court to grant a variance as it relates to the guideline range that the court

finds was accurately and correctly calculated. The court's considered the reasons and the basis offered by defendant in regards to that, but again, at this time, upon review and consideration, it does not grant the variance.

Id. at 30-31, R. Vol. 2 at 33-34.

In selecting the particular sentence for Mr. Lewis, the court told Mr. Lewis that it was concerned with his criminal history and the nature of that history. The court also noted Mr. Lewis's continued drug use while on pretrial release. The court then determined that a tentative sentence of 168 months would de sufficient, but not greater than necessary, to satisfy the sentencing objectives, and the court discussed the sentencing factors of 18 U.S.C. § 3553(a). When the court asked Mr. Lewis if he had any objections to the court's proposed findings of fact and tentative sentence, defense counsel responded: "No, Your Honor. Well, we object based on the argument that I had made previously concerning the propriety of the variance, I think it would have been appropriate in this case, but we understand the court's . . . rationale." Id. at 36.

The court then sentenced Mr. Lewis to 168 months' imprisonment on each of the four counts, to be served concurrently. This appeal followed, in which Mr. Lewis argues "the District Court failed to properly consider the variance as a matter of policy which constitutes an abuse of discretion and a procedurally [and substantively] unreasonable sentence." Appellant's Br. at 4.

-12-

**DISCUSSION**

We review a criminal defendant's sentence for reasonableness, deferring to the district court under the "familiar abuse-of-discretion standard of review." Gall v. United States, 552 U.S. 38, 46 (2007).  Reasonableness review has a procedural and a substantive component.  A court may commit procedural error in imposing a sentence by "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." Id. at 51.  In performing substantive reasonableness review, we consider "whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)."  United States v. Alapizco-Valenzuela, 546 F.3d 1208, 1215 (10th Cir. 2008).  A sentence imposed within the properly calculated advisory range is entitled to a rebuttable presumption of reasonableness. United States v. Sanchez-Suarez, 446 F.3d 1109, 1114 (10th Cir. 2006).

Mr. Lewis alleges that the district court committed both procedural and substantive error in failing to grant a downward variance as a matter of policy based on the disparity between crack and powder sentences.  As a procedural matter, Mr. Lewis claims the district court's procedural error was its failure, in

calculating his sentence, to decide *as a matter of policy*, that a downward variance from the crack guidelines was necessary.[3]

**I. Procedural reasonableness:**

Mr. Lewis argues the district court imposed a procedurally unreasonable sentence. As indicated above, procedural error occurs when a court "fail[s] to calculate (or improperly calculat[es]) the Guideline range, treat[s] the Guidelines as mandatory, fail[s] to consider the § 3553(a) factors, select[s] a sentence based on clearly erroneous facts, or fail[s] to adequately explain the chosen sentence." Gall, 552 U.S. at 51.

Mr. Lewis argues that the district court erred in this case because it failed to follow a particular sequence in its sentencing. He argues that:

> a Court *must* answer the following questions: first, in the Court's judgment based on the evidence regarding disparity, is there an unwarranted disparity between the crack and powder cocaine guidelines? Second, . . . what, in the sentencing court's judgment, is the correct ratio?
>     After going through this process, the Court returns to its traditional analysis of § 3553(a) factors to determine whether, given the facts and circumstances particular to the individual case in front of it and in consideration of the overarching goals of sentencing[, the court reached the appropriate sentence].

---

[3]The government argues we should only review this issue for plain error, as Mr. Lewis failed to raise this precise argument before the district court. We need not decide whether the issue was preserved because, whether we apply a "plain error" standard or simply inquire whether the court erred, the outcome would be the same.

Appellant's Br. at 8. We discern no such rigid procedural or sequential requirement in Kimbrough or Spears or our own case-law. Nor is a judge required to state his or her opinion on the ratio, whether requested by counsel or not. In broader terms, the district court has no obligation to duplicate the efforts of the Sentencing Commission or Congress and decide what guidelines policy it would impose if it were the sole decision-maker. Indeed, mandating such a procedure or requiring from the judge such opinions on disparity or the correct ratio would be the antithesis of the kind of discretionary sentencing courts have traditionally enjoyed and may now exercise in sentencing crack cocaine defendants.

Our court has recognized, consistent with Supreme Court precedent, that district courts may *permissibly* depart or vary downward from the crack guidelines, but they are not required to do so. As the Supreme Court stated in Spears, district courts "are entitled" to vary from the crack guidelines based on a policy disagreement with those guidelines. That language does not say that they *must* vary. We noted this point in United States v. Caldwell, 585 F.3d 1347, 1355 (10th Cir. 2009), cert. denied, 2010 WL 2516004 (2010), stating, "[n]othing in Kimbrough mandates that a district court reduce a defendant's sentence in order to eliminate the crack/powder sentencing disparities." (citing United States v. Trotter, 518 F.3d 773, 774 (10th Cir. 2008)); see also United States v. Bowie, ___ F.3d ___, 2010 WL 3325606, at *4 (8th Cir. 2010) ("While the district court

-15-

would have been within its discretion to consider the crack versus powder cocaine disparity in sentencing [the defendant], the district court certainly was not *required* to vary downward on this basis."); United States v. Etchin, 614 F.3d 726, 740 (7th Cir. 2010) ("Kimbrough permits district courts to deviate from the crack cocaine guidelines but does not require them to do so."); United States v. Laurent, 607 F.3d 895, 904 (1st Cir. 2010) ("Kimbrough took note of the extreme sentencing disparity then existing under the guidelines and held that a district court *may* depart downward based on policy disagreement with the guidelines' disparity, but the Court did not require a departure or a variance.")  Thus, the district court did not err in its calculation of Mr. Lewis's advisory guidelines sentence when it refused to vary, as a matter of policy, from the crack guidelines.

## II.  Substantive Reasonableness:

Having concluded that the district court determined a properly calculated within-guideline sentence, we turn to the substantive reasonableness of that sentence, bearing in mind that it is entitled to a rebuttable presumption of reasonableness.  "We may not examine the weight a district court assigns to various § 3553(a) factors, and its ultimate assessment of the balance between them, as a legal conclusion to be reviewed de novo.  Instead, we must 'give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the [sentence imposed]."  United States v. Smart, 518 F.3d 800, 807-08

(10ᵗʰ Cir. 2008) (quoting <u>Gall</u>, 552 U.S. at 51). To determine the substantive reasonableness of a sentence, we look at the totality of the circumstances. <u>United States v. Munoz-Nava</u>, 524 F.3d 1137, 1146 (10ᵗʰ Cir. 2008).

Mr. Lewis argues the sentence was substantively unreasonable because it was longer than necessary to achieve the goals of 18 U.S.C. § 3553(a), and the § 3553(a) factors, particularly § 3553(a)(6), were not properly considered. Section 3553(a)(6) states that the court, in determining the particular sentence to be imposed, must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). To the contrary, our review of the record reveals that the district court did review the § 3553(a) factors, and concluded that a variance was inappropriate in this particular case. The court noted Mr. Lewis's lengthy criminal history, including some crimes of violence, his possession of a weapon, and his apparent disregard for the law, as demonstrated by the fact that he used drugs several times while on pretrial release.

To the extent Mr. Lewis argues that the district court's failure to vary based upon the crack/powder disparity constitutes substantive unreasonableness, we have already explained that the failure to vary for that purpose is not, by itself, a demonstration of unreasonableness or error by the district court. Similarly, it is not a ground for arguing that the sentence does not avoid disparities between

defendants with similar records and who have committed similar offenses. There is no mandate that we must treat crack and powder cocaine defendants equally.

In short, we conclude that the sentence imposed was substantively reasonable, given the particular circumstances of Mr. Lewis's case.

## CONCLUSION

For the foregoing reasons, we AFFIRM the sentence imposed in this case.