**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 4, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

RODOLFO ESCOBAR-AGUIRRE,

Defendant - Appellant.

No. 09-3300

(D. Kansas)

(D.C. No. 2:09-CR-20032-KHV-1)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **ANDERSON**, and **TYMKOVICH**, Circuit Judges.

Rodolfo Escobar-Aguirre pleaded guilty to illegal reentry by a deported alien who had been previously convicted of an aggravated felony. The district court sentenced him to 41 months' imprisonment, the bottom of the sentencing guidelines range. On appeal he argues that (1) the district court failed to recognize its authority to vary downward from the sentencing guidelines based upon policy disagreement with those guidelines, and (2) his specific circumstances warranted a below-guidelines sentence when analyzed under the

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

factors listed in 18 U.S.C. § 3553(a). We have jurisdiction under 28 U.S.C. § 1291 and affirm his sentence because (1) the district court did recognize its authority to vary downward on policy grounds but chose not to exercise that authority and (2) Mr. Escobar-Aguirre failed to rebut the presumption of reasonableness of a within-guidelines sentence.

## I.    BACKGROUND

Mr. Escobar-Aguirre was convicted of conspiracy to commit sexual assault in a Colorado court in 1992. He was sentenced to an eight-year term of imprisonment but was deported to Mexico on September 29, 1994. He illegally returned to the United States in April of 2002 to be with his future wife, Laura Vega, who was pregnant with their son. He married Ms. Vega on April 5, 2003, and they lived together in Kansas with their son and Ms. Vega's two daughters. On October 22, 2003, he received a traffic citation in Lawrence, Kansas, but he escaped the detection of the Immigration and Customs Enforcement Agency (ICE) by using an alias. On January 21, 2009, he was arrested in Junction City, Kansas, for driving under the influence, obstruction of justice, and driving without a driver's license. After his arrest he was interviewed by agents from ICE, who determined that he was present in the United States illegally. He was indicted by a federal grand jury in the United States District Court for the District of Kansas on one count of illegal reentry after deportation for an aggravated felony. He pleaded guilty on June 1, 2009.

Under the United States Sentencing Guidelines (USSG), Mr. Escobar-Aguirre's base offense level of 8, *see* USSG § 2L1.2(a), was increased by a 16-level enhancement because of his prior conviction for a violent felony, *see id.* § 2L1.2(b)(1)(A)(ii), and reduced by 3 levels for his acceptance of responsibility, *see id.* § 3E1. His prior conviction placed him in criminal-history category II, which set his advisory guidelines range at 41 to 51 months' imprisonment. He agreed with this guidelines range calculation but requested a sentence of 12 months and a day, arguing that such a downward variance was appropriate under the factors listed in 18 U.S.C. § 3553(a). He also challenged the policy behind the guidelines' 16-level increase for a prior violent-felony conviction.

The district court denied the variance request and sentenced Mr. Escobar-Aguirre to 41 months' imprisonment followed by two years' supervised release. It stated that it did not believe that it was its "role to categorically find that the guidelines just should not be followed," even if it believed "as a matter of policy" that the guidelines resulted in excessive sentences. R., Vol. 2 at 72. Instead, it viewed the question to be "whether in this particular case the defendant should receive a sentence which is different from the guidelines on account of the factors which are identified in section 3553(a)." *Id.* It found that Mr. Escobar-Aguirre's situation was "not unique" and "very typical of the cases that we see where defendants commit this kind of offense," *id.* at 73, and it imposed a within-guidelines sentence. Mr. Escobar-Aguirre's counsel objected to the procedural

and substantive reasonableness of the sentence. At counsel's request the district court clarified its position and stated that it did not believe that it should "second-guess the reasonableness of the sentencing policies which are articulated in the sentencing guidelines." *Id.* at 78. Although the court recognized that it did not "have to follow" the guidelines, it would not "refuse to follow them just because [it] would have made a different policy decision . . . in this situation." *Id.* at 79. The court added that it did not "disagree with the guidelines" in this case. *Id.*

## II. DISCUSSION

Section 3553(a) instructs a sentencing judge to "impose a sentence sufficient, but not greater than necessary," to comply with the purposes of sentencing set forth in the statute. 18 U.S.C. § 3553(a); *see Rita v. United States*, 551 U.S. 338, 348 (2007). Although a district court is to begin its consideration of a sentence by properly calculating the defendant's advisory sentencing range under the sentencing guidelines, *see Gall v. United States*, 552 U.S. 38, 49 (2007), a district court may not treat the guidelines as mandatory, *see id.* at 51, or assume that a within-guidelines sentence is presumptively reasonable, *see id.* at 50. Instead, it must make an individualized assessment based on the facts presented, *see id.*, by considering the following factors:

> (1) offense and offender characteristics; (2) the need for a sentence to reflect the basic aims of sentencing, namely (a) just punishment (retribution), (b) deterrence, (c) incapacitation, (d) rehabilitation; (3) the sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid

unwarranted disparities [between defendants]; and (7) the need for restitution.

*Rita*, 551 U.S. at 347–48 (internal quotation marks omitted) (discussing 18 U.S.C. § 3553(a)(1)–(7)).  If the court determines in a particular case that, after applying the § 3553(a) factors, a within-guidelines sentence is greater than necessary to serve the objectives of sentencing, it may vary downward the individual defendant's sentence.  *See Kimbrough v. United States*,  552 U.S. 85, 91 (2007). It is also "entitled to reject and vary categorically" from the guidelines "based on a policy disagreement with those Guidelines."  *Spears v. United States*, 129 S. Ct. 840, 843–44 (2009) (per curiam).

We review a sentence for reasonableness and apply an "abuse-of-discretion standard of review."  *Gall*, 552 U.S. at 46.  This reasonableness review has both procedural and substantive elements.  *United States v. Martinez*, 610 F.3d 1216, 1223 (10th Cir. 2010).  Procedural errors include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall*, 552 U.S. at 51.  A district court abuses its discretion under the substantive element "when it renders a judgment that is arbitrary, capricious, whimsical, or manifestly unreasonable."  *United States v. Lewis,* 594 F.3d 1270, 1277 (10th Cir.

2010) (internal quotation marks omitted). A sentence that falls within the properly calculated guidelines range is entitled to a rebuttable presumption of reasonableness. *See id.* The defendant may rebut the presumption "by demonstrating that the sentence is unreasonable when viewed against the other factors delineated in § 3553(a)." *Id.* (internal quotation marks omitted).

## A. Recognition of Authority to Vary Downward

Mr. Escobar-Aguirre argues that the district court's comments at his sentencing hearing demonstrated its failure to recognize its authority to vary downward from the guidelines based on policy grounds. He contends that the court therefore did not consider his arguments that the 16-level increase under USSG § 2L1.2(b)(1)(A)(ii) leads to unreasonable sentences because (1) the resulting sentences are unusually severe when compared to preguidelines sentences in immigration cases or to the guidelines ranges for offenses such as sex trafficking of children and armed robbery causing serious bodily injury; and (2) the Sentencing Commission has not articulated any considered rationale for the increase. He argues that the court's imposition of the sentence was an abuse of discretion because the resulting sentence did not "adequately compensate for the groundless severity of the 16-level increase" under USSG § 2L1.2(b)(1)(A)(ii). Aplt. Br. at 9.[1]

_____

[1]Although Mr. Escobar-Aguirre characterizes this argument as a challenge to the substantive reasonableness of his sentence, a district court's failure to
(continued...)

We reject the argument. The district court's statements at sentencing do not support Mr. Escobar-Aguirre's claim that it was under a mistaken belief that it lacked the authority to vary downward on grounds of policy. The court clearly stated at the hearing that it understood that it did not have to follow the guidelines. *See* R., Vol. 2 at 79 ("I realize I don't have to follow [the guidelines] . . . ."). Mr. Espinoza-Aguilar's argument mistakes the court's choice not to exercise its authority for a failure to recognize that it has such authority. Although a district court is "entitled" to vary downward from the guidelines based on policy disagreement with the guidelines, *Spears*, 129 S. Ct. at 843–44, it is also entitled to defer to the policy judgment of the guidelines, *see United States v. Lewis*, No. 09-3329, 2010 WL 4262020 (10th Cir. Oct. 29, 2010), particularly when, as in this case, the court agrees with that policy, *see* R., Vol. 2 at 79 ("And I will add that I don't disagree with the guidelines . . . ."). Indeed, two of the § 3553(a) factors support deference to guidelines' policy. First, § 3553(a)(4) requires the district court to consider the guidelines themselves. *See United States v. Sells*, 541 F.3d 1227, 1239 (10th Cir. 2008) ("the Guidelines are a factor the district court must consider under § 3553(a),"(internal quotation marks omitted)). Second, § 3553(a)(6) requires the district court to consider "the need

---

[1](...continued)
recognize its authority to vary a sentence on policy grounds also could be viewed as a procedural error. The characterization of the argument, however, does not affect our disposition of this appeal.

to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Deviation from the guidelines based on a categorical disagreement with guidelines policy obviously creates the risk of sentencing disparities based only on such differing policy views.

**B.    The § 3553(a) Factors**

Mr. Escobar-Aguirre also argues that, aside from his challenge to the policy behind the guidelines, his within-guidelines sentence is substantively unreasonable under the § 3553(a) factors. He relies on the age of his previous conviction (over 18 years earlier), his nonviolent behavior since then, and his characteristics as a good father and provider to his family (supported by letters from his in-laws, a letter from his stepdaughter's health-care provider, letters from his son and stepdaughters, and testimony from his wife, who said, among other things, that he provided financial aid to his mother in Mexico while she underwent treatment for breast cancer). The district court, however, saw nothing "that really makes this any different than so many of the other sad cases . . which bring people here for the crime of illegal reentry after deportation for an aggravated felony." R., Vol. 2 at 73. We are particularly deferential to findings of this nature by the district court because of its far greater familiarity with the mine run of sentencing cases. *See Koon v. United States*, 518 U.S. 81, 98 (1996) (noting that in 1994, 93.9% of guidelines cases were not appealed). Although

-8-

Mr. Escobar-Aguirre finds some support in the Ninth Circuit decision in *United States v. Amezcua-Vasquez*, 567 F.3d 1050, 1052 (9th Cir. 2009), we are not persuaded. Mr. Escobar-Aguirre has not rebutted the presumption of reasonableness of his guidelines sentence.

## III. CONCLUSION

We AFFIRM the district court's judgment.

ENTERED FOR THE COURT


Harris L Hartz
Circuit Judge