**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 14, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ADAM WAYNE PURVIS,

    Defendant - Appellant.

No. 19-3003
(D.C. No. 5:17-CR-40111-DDC-1)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **HOLMES**, and **EID**, Circuit Judges.
_____

Defendant Adam Wayne Purvis pleaded guilty to possession with intent to

distribute methamphetamine.  At sentencing, Purvis sought a four-level downward

variance based on his argument that the methamphetamine Sentencing Guideline was

overly punitive.  The district court denied Purvis's request.  On appeal, Purvis

contends that the district court erred because it failed to recognize that it had the

authority to vary downwards from the methamphetamine Sentencing Guideline.  We

conclude that the district court understood its discretion to vary downwards and

affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.

On May 29, 2018, Purvis pleaded guilty to possession with intent to distribute 50 grams or more of methamphetamine. The Presentence Investigation Report set Purvis's base offense level at 36 due to his possession of between 1.5 and 4.5 kilograms of "ice" methamphetamine. Following a three-level reduction for acceptance of responsibility, Purvis was assigned an advisory Sentencing Guidelines range of 188 to 235 months' imprisonment.

Purvis then filed a supplemental sentencing memorandum requesting a four-level downward variance based on his argument that the methamphetamine Guideline was overly punitive. Purvis's memorandum incorporated the arguments made by the defendant in *United States v. Rodriguez-Chavarria* (D. Kan. Case No. 17-40121-01-DDC). He asserted that methamphetamine should not be sentenced more harshly than crack cocaine because crack is more dangerous to users and society. Both Congress's mandatory minimum laws and the Sentencing Guidelines punish methamphetamine approximately 5.5 times more harshly than crack. 18 U.S.C. § 2D1.1(c); 21 U.S.C. § 841.

The district court denied Purvis's request for a downward variance.[1] It stated that Purvis's arguments "can't provide a basis to displace policy decisions that Congress has made and that the Sentencing Commission has based on them." ROA

---

[1] Despite this denial, Purvis still received a below-Guidelines sentence of 142 months due to the government's recommendation.

Vol. II at 79. As an explanation for its decision, the district court cited to its analysis of the same arguments in *United States v. Rodriguez-Chavarria*.

The district court's analysis began by explaining what it believed was the basis for the Sentencing Guidelines' graduated scale of punishment for different drugs. The district court disagreed with Purvis's claim that the basis for the Guidelines punishment scale was the harmfulness of each drug. Instead, the court explained that the Guidelines created punishments in proportion to the mandatory minimum provisions set by Congress. ROA Supp. at 14 ("The . . . Sentencing Commission took the mandatory minimum provisions . . . and made them proportionately applicable to every drug trafficking offense.").

The district court then emphasized that Congress acted to increase methamphetamine penalties four times between 1988 and 1999. The court also noted that in 1990, when Congress reduced the mandatory minimum quantities for crack, it left the quantities for methamphetamine unchanged.

Finally, the district court concluded that it was unconvinced by Purvis's argument that methamphetamine should be punished more leniently than crack because methamphetamine is less harmful to users and society. The district court stated, "when I'm forced to choose . . . between my own assessment of empirical data about various drugs' relative harm and the judgment made by members of Congress, I choose the latter. That's consistent with my view of the courts in our system of government . . . ." *Id.* at 19–20.

On appeal, Purvis contends that the district court erred because it failed to recognize that it had the authority to vary downwards from the methamphetamine Sentencing Guideline. We disagree.

## II.

We review a criminal defendant's sentence for both procedural and substantive reasonableness. *United States v. Lewis*, 625 F.3d 1224, 1231 (10th Cir. 2010).[2] In this case, Purvis raises only a procedural-reasonableness challenge. A sentence is procedurally unreasonable if the district court "fail[s] to calculate (or improperly calculate[es]) the Guidelines range, treat[s] the Guidelines as mandatory, fail[s] to consider the § 3553(a) factors, select[s] a sentence based on clearly erroneous facts, or fail[s] to adequately explain the chosen sentence." *Id.* (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)).

To avoid procedural error in drug-trafficking cases, district courts must "recognize that they have the authority to vary downward" from the Sentencing Guidelines based on a policy disagreement with them. *Id.* at 1229; *see also Spears v. United States*, 555 U.S. 261, 264 (2009). Generally, because the Sentencing Guidelines were developed using an empirical approach based on past sentencing data, a district court's authority to vary from the Guidelines is strongest when the court's decision is based on the circumstances of an individual case and weakest

---

[2] In *Dorsey v. United States*, 567 U.S. 260 (2012), the Supreme Court ruled that the Fair Sentencing Act's lower mandatory minimums apply to the post-Act sentencing of pre-Act offenders, indirectly overruling *Lewis* on that issue only.

4

when the court's decision is based on a categorical policy disagreement with the Guidelines. *Spears*, 555 U.S. at 264; *Kimbrough v. United States*, 552 U.S. 85, 96 (2007). But the Guidelines for drug-trafficking offenses are not based on this empirical approach. *Kimbrough*, 552 U.S. at 96. Consequently, a district court's variance based on a categorical policy disagreement with the drug-trafficking Guidelines "is not suspect." *Spears*, 555 U.S. at 264. While a district court is not required to vary from the Guidelines in a drug-trafficking case, it must understand that it has the authority to do so. *Lewis,* 625 F.3d at 1229, 1232.

We review the procedural reasonableness of a sentence for abuse of discretion. *United States v. Gieswein*, 887 F.3d 1054, 1058 (10th Cir. 2018). In doing so, we review factual findings for clear error and legal determinations de novo. *United States v. Lopez-Avila*, 665 F.3d 1216, 1218–19 (10th Cir. 2011). Here, Purvis argues that he properly raised his argument below and that therefore his challenge should be reviewed de novo as an error of law under *Lopez-Avila*. The United States argues that plain error review applies because Purvis failed to raise his argument in district court. *See United States v. Tena-Arana*, 738 F. App'x 954, 958–61 (10th Cir. 2018) (unpublished) (distinguishing *Lopez-Avila* and applying plain error).[3] We need not decide which standard of review is appropriate, however, because Purvis's argument fails under any standard. *See United States v. Browning*, 252 F.3d 1153, 1158 (10th Cir. 2001).

---

[3] We cite this case for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

**III.**

Purvis asserts that the district court committed a procedural error at sentencing because it failed to understand that it had the authority to vary downwards from the methamphetamine Sentencing Guideline. We reject Purvis's argument because the district court understood its authority to vary downwards.

As support for his argument, Purvis points mainly to two statements made by the district court. First, the district court concluded that Purvis's arguments "can't provide a basis to displace policy decisions that Congress has made and that the Sentencing Commission has based on them." ROA Vol. II at 79. Second, the district court stated, "when I'm forced to choose . . . between my own assessment of empirical data about various drugs' relative harm and the judgment made by members of Congress, I choose the latter. That's consistent with my view of the courts in our system of government, and in particular the role that the courts play in that system." ROA Supp. at 19–20. When these statements are viewed in the context of the district court's entire analysis, however, they do not indicate that the district court failed to understand its authority to vary downwards from the methamphetamine Sentencing Guideline.

Although the district court ultimately rejected Purvis's argument that methamphetamine should be sentenced more leniently than crack cocaine because crack is more dangerous to users and society, the district court did not reject Purvis's argument because it believed that it lacked the authority to vary downwards. The district court's analysis began by explaining what it believed was the basis for the

6

Sentencing Guidelines' graduated scale of punishment for different drugs. The district court disagreed with Purvis's claim that the basis for the Guidelines' punishment scale was the harmfulness of each drug. Instead, the court explained that the Guidelines created punishments in proportion to the mandatory minimum provisions set by Congress. *Id.* at 14 ("The . . . Sentencing Commission took the mandatory minimum provisions . . . and made them proportionately applicable to every drug trafficking offense.").

As a result, the district court found Purvis's arguments unconvincing because they relied on the false premise that the Sentencing Guidelines were mainly concerned with punishing drug crimes in accordance with each drug's harmfulness. Because the district court believed that the actual basis for the Guidelines was Congress's mandatory minimum provisions, it decided not to vary downwards based on Purvis's argument about which drug is more harmful. *Id.* at 19 ("[B]ased on that premise, the defendant argues that the Sentencing Commission just isn't very good at gauging the relative harmfulness of various drugs . . . . My conclusion is that the Sentencing Commission engaged in a qualitatively different endeavor . . . ."). Instead, the district court chose to impose a sentence based on what it believed was the actual basis for the Guidelines—"the judgment made by members of Congress" when they set the mandatory minimum penalties. *Id.* Thus, the district court's analysis indicates that it understood its authority to vary downwards but chose not to do so because it was unconvinced by Purvis's argument.

7

Although Purvis contends that certain statements made by the district court demonstrate its failure to understand its authority to vary downwards, we interpret the district court's statements in light of its entire analysis. *See United States v. Kamper*, 748 F.3d 728, 742–43 (6th Cir. 2014) (concluding the district court's analysis showed that it "actually believed" it lacked the authority to vary downwards even though it explicitly stated that it had discretion to do so). Furthermore, the district court's statements cited by Purvis do not indicate that the district court misunderstood its authority.

For example, the district court concluded that Purvis's arguments "can't provide a basis to displace policy decisions that Congress has made and that the Sentencing Commission has based on them." ROA Vol. II at 79. But this conclusion could have meant that the district court believed Purvis's arguments "can't provide a basis" to vary downwards simply because the court decided that they were unconvincing. Indeed, if the district court had concluded that Purvis's arguments were unavailing solely because it lacked the authority to vary downwards, the district court likely would not have provided such a detailed analysis in response to Purvis's arguments. *See* ROA Supp. at 12–20.

Purvis also cites to the district court's comment that when "forced to choose . . . between my own assessment of empirical data about various drugs' relative harm and the judgment made by members of Congress, I choose the latter. That's consistent with my view of the courts in our system of government, and in particular the role that the courts play in that system." *Id.* at 19–20. In this statement, the

8

district court indicated that it had a choice but that it chose to defer to Congress's judgment rather than to base Purvis's sentence on its own assessment of the harmfulness of various drugs. Even though the district court commented that this decision was "consistent with [its] view of the courts in our system," that does not demonstrate that the district court had relinquished its authority to vary downwards. *Id.*

Moreover, this statement is distinguishable from the statements made by district courts in cases where they were found to have misunderstood their authority to vary downwards. In those cases, the district courts ceded their authority to Congress more explicitly. *E.g.*, *Moore v. United States*, 555 U.S. 1, 2 (2008) ("I'm applying the law as it currently stands. If that is going to be changed, that is a congressional matter. Congress is the one who looks at the guidelines and decides whether or not they should be put . . . in force . . . . It isn't the judges."); *Kamper*, 748 F.3d at 736 ("Because the Court cannot take on the powers of Congress and the Commission to establish sentencing policy, and because the Court would refrain from doing so in this case for institutional reasons even if it could assume such powers, the Court denied Kamper's motion."); *United States v. Tabor*, 531 F.3d 688, 690 (8th Cir. 2008) ("As a judge, I should defer to the choice of penalties that Congress has made for crack cocaine even though I would quickly do something different if it were within my proper role to choose.").

Finally, in *United States v. Lewis*, we held that the district court understood its authority to vary downwards when it made comments like those made by the district

9

court here about the proper role of courts in our system of government. 625 F.3d at 1232. In *Lewis*, the district court declined to vary downwards. It explained that "the law right now is not that [the crack/cocaine disparity] should be one to one" and "[u]ntil congress actually acts, the court would consider the law that's presently in effect." *Id.* at 1230 (first alteration in original). Like the district court in *Lewis*, the district court here preferred to impose a sentence based on the Sentencing Guidelines rather than its own assessment of the harmfulness of various drugs. Accordingly, the district court did not misunderstand its authority to vary downwards. *See id.* at 1232 ("[T]he district court has no obligation to duplicate the efforts of the Sentencing Commission or Congress and decide what guidelines policy it would impose if it were the sole decision-maker."). Although the district court in this case did not explicitly state that it had "the right to issue a variance" as the district court did in *Lewis*, *id.* at 1230, the district court here still analyzed Purvis's arguments and considered varying downwards.

**IV.**

Because the district court understood that it had the authority to vary downwards from the methamphetamine Sentencing Guideline, we AFFIRM the district court's judgment. Appellant's unopposed motion to supplement the record, which was provisionally granted on 7/24/2019, is hereby granted.

Entered for the Court

Allison H. Eid
Circuit Judge